IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HEATHER AVENARIUS,<br><br>Defendant. | Case No. CR15-1010<br><br>ORDER FOR PRETRIAL DETENTION |

On the 28th day of April, 2015, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Justin Lightfoot. The Defendant appeared personally and was represented by her attorney, Chad R. Frese.

## I. RELEVANT FACTS AND PROCEEDINGS

On April 23, 2015, Defendant Heather Avenarius was charged by Indictment (docket number 3) with conspiracy to manufacture a controlled substance near a protected location (Count 1), possession of pseudoephedrine (Count 3), and false declaration before grand jury (Count 5). At the arraignment on April 24, 2015, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on June 22, 2015.

Officer Chad Leitzen of the Dubuque Police Department testified regarding the circumstances underlying the instant charges. On July 4, 2014, Officer Nick Jobgen accompanied Megan Calendar to the home of Benjamin Heiderscheit (a co-defendant in this case) to retrieve personal belongings. Apparently, Calendar had previously lived with Heiderscheit. Heiderscheit's mother, Judy Heiderscheit, was at the residence and agreed to let Calendar in to retrieve her belongings. Officer Jobgen was not permitted to enter. When Calendar came out of the house, however, she reported to Jobgen that there were

several spent one-pot vessels used for the manufacture of methamphetamine, and there was also an odor of methamphetamine manufacturing. Jobgen could also smell the odor outside the house.

Two years earlier, a search warrant had been obtained for the same residence. At that time, authorities found 108 spent one-pot vessels. Calendar was present when the earlier search warrant was executed, and she claimed responsibility for the one-pot vessels so that Heiderscheit would not "get in trouble." Following the events of July 4, 2014, Officer Leitzen met with Calendar to discuss her observations. Calendar said that Judy Heiderscheit was inside the home and was cleaning up the evidence of meth manufacturing.

As Officer Leitzen was preparing an application for a search warrant for the property, Defendant called and reported that Heiderscheit was not at the residence and that there was "nothing" in the house. Defendant claimed that Calendar was simply trying to get Heiderscheit into trouble. A search warrant was obtained and officers found more than 40 spent one-pot vessels used to manufacture methamphetamine, and other items consistent with the manufacture of methamphetamine. In addition, officers found evidence that Heiderscheit was living there, and found children's toys throughout the residence.

A search of the "pseudo logs" for Defendant and Heiderscheit revealed excessive purchases of pseudoephedrine. In addition, officers obtained text messages (Government's Exhibit 1) showing Defendant was attempting to obtain pseudoephedrine from others. Kaleena Everett, Krystle Wall, and Teeya Seeley all told investigators that they had purchased pseudoephedrine and then sold it to Defendant.

When officers attempted to arrest Defendant on the federal warrant, she initially stopped her vehicle, but then drove off, resulting in a "low speed pursuit." A syringe was found in the center console of Defendant's vehicle, containing what appeared to be blood and meth. After being *Mirandized*, Defendant admitted providing boxes of pseudoephedrine to Heiderscheit so they could be "added to the mix." Defendant admitted

2

providing pseudoephedrine between May 2014 and February 2015, although she told officers that she provided "at most five boxes per month."

According to the pretrial services report, Defendant is 34 years old. She was born and raised in Dubuque. She has never been married, but has five children with two different men. The oldest two children (ages 13 and 14) reside with Defendant's mother in Dubuque. The three younger children (ages 5, 4, and 2) live with their father in Dubuque. Prior to her arrest, Defendant was living with Heiderscheit. (A warrant was issued for Heiderscheit's arrest and at the time of the instant hearing he was still at-large.) If released, Defendant said she would live with her mother. Defendant's mother told the pretrial services officer, however, that she "does not trust" Defendant and she "is not welcome to reside at her home."

Defendant has been unemployed for nearly two years. She was financially supported by her mother and Heiderscheit, with her only source of income being food stamps. She is in good physical health, but was committed to the psychiatric unit at Mercy Hospital for several days in 2005 due to substance abuse issues. Defendant admitted using marijuana on a daily basis for most of her life, with her last use approximately three days prior to her arrest. She has also used methamphetamine (off-and-on) since age 15 and told the pretrial services officer that for the past two years she has used approximately .25 grams of methamphetamine per day, with her last use being two days prior to her arrest.

While she has not been previously convicted of a felony, Defendant has a number of misdemeanor convictions, including driving while suspended (twice), possession of a controlled substance, criminal mischief in the fifth degree, harassment in the third degree, theft in the fourth degree, unlawful possession of a prescription drug, possession of drug paraphernalia, and theft in the fifth degree. Defendant has failed to appear for court proceedings on at least three occasions, and was placed on absconder status at least once. Warrants were issued for her arrest on six occasions due to her failure to appear or for a

violation of probation. She has had her probation revoked and has been found in contempt of court twice.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person

4

as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). In a "presumption

case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to manufacture a controlled substance near a protected location, possession of pseudoephedrine, and false declaration before grand jury. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to 18 U.S.C. § 3142(f)(1)(C).

Because there is probable cause to believe Defendant committed a serious drug offense, there is a rebuttable presumption that Defendant should be detained pending trial. The evidence against Defendant is strong. Defendant is not employed and does not have a stable residence. She is an active drug user, using both marijuana and methamphetamine almost daily. She has failed to appear for court proceedings in the past and was once placed on absconder status. Her probation has been revoked and she has been found in contempt twice. When officers attempted to arrest her on the instant charge, she initially led them on a low speed chase. The Court has no confidence that Defendant would comply with any terms or conditions which it may impose for his release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will

6

reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (April 24, 2015) to the filing of this Ruling (April 29, 2015) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 29th day of April, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA