# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>HEATHER AVENARIUS,<br><br>        Defendant. | No. 15-CR-1010-CJW-MAR<br><br>**ORDER** |

## I.  INTRODUCTION

This matter is before the Court on defendant's Motion for Compassionate Release filed on September 23, 2020. (Docs. 114 & 115). On September 30, 2020, the government timely filed a resistance. (Doc. 116). On October 5, 2020, defendant timely filed a reply. (Doc. 119). For the following reasons, the Court **denies** defendant's motion.

## II.  RELEVANT BACKGROUND

From approximately May 2014 through November 2014, defendant conspired with B.H. to manufacture methamphetamine. (Doc. 79, at 4). Defendant herself was a methamphetamine user. (*Id.*). She knowingly supplied B.H. with pseudoephedrine pills on 50 occasions and attempted to do so five other times. (*Id.*, at 4–5). She also supplied him with other items used to manufacture methamphetamine such as coffee filters. (*Id.*, at 4). Defendant communicated with B.H. via text about the conspiracy and used coded language to conceal their activities. (*Id.*). Defendant also recruited others to obtain large quantities of pseudoephedrine pills for her in exchange for methamphetamine or money.

(*Id.*, at 4–7). B.H. manufactured the methamphetamine at his residence, which was within 1,000 feet of both an elementary school and a park. (*Id.*, at 4).

On July 4, 2014, police searched B.H.'s residence and found 45 spent one-pot methamphetamine labs, lithium batteries, lighter fluid, sulfuric acid, Morton salt, Coleman fuel, rubber tubing, and coffee filters. (*Id.*, at 5). On October 15, 2014, defendant knowingly gave false testimony under oath before a grand jury, stating that she never purchased pseudoephedrine pills and gave them to B.H. (*Id.*, at 8). On April 24, 2015, officers attempted to stop defendant's vehicle and arrest her on a warrant issued by this Court. (*Id.*). Defendant initially stopped her vehicle, but then began driving again at around 25 to 30 miles per hour in a residential neighborhood. (*Id.*). Her flight ended after about one minute. (*Id.*). While arresting defendant, officers recovered a syringe containing blood and methamphetamine in her car. (*Id.*).

On April 23, 2015, a grand jury issued an Indictment charging defendant with one count of conspiracy to manufacture methamphetamine near a protected location in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 860(a), one count of possession of pseudoephedrine in violation of Section 841(c)(2), and one count of making a false declaration before a grand jury in violation of Title 18, United States Code, Section 1623(a). (Doc. 3). On June 22, 2015, defendant pled guilty to the conspiracy charge under a plea agreement with the government. (Docs. 61 & 64).

On September 10, 2015, the United States Probation office filed defendant's final presentence investigation report. (Doc. 79). Defendant was, at that time, 34 years old. (*Id.*, at 2). Her parents separated when she was five years old. (*Id.*, at 16). Despite this, she maintained contact and a good relationship with both her parents. (*Id.*). Defendant did not graduate high school and notably took special education classes while enrolled. (*Id.*, at 18). Aside from two months in 2011, defendant had not been employed for the past eight years. (*Id.*, at 18–19). She had two children from a prior relationship

2

with whom she had sporadic contact. (*Id.*, at 16). Defendant had three other children from another prior relationship who were removed from her care after marijuana plants were found in her house, then returned to her, then moved in with their father, then removed again due to their father's methamphetamine abuse. (*Id.*). Defendant planned to marry B.H., her boyfriend and co-defendant. (*Id.*, at 17).

Defendant had no notable physical health issues. (*Id.*). Defendant reported that she had been diagnosed with situational anxiety and, it appears, had difficulty sleeping. (*Id.*). Defendant began using alcohol, marijuana, and methamphetamine at age 15. (*Id.*). She mostly used marijuana on a weekly basis but was using daily at the time of the instant offense. (*Id.*). Defendant used methamphetamine daily for 12 or 13 years, was sober for about a year, and then relapsed into daily use. (*Id.*). She had participated in a variety of substance abuse treatment programs with varying success. (*Id.*, at 17–18).

Defendant's criminal history was significant. At age 25, she was convicted of driving on a suspended license twice and possession of a controlled substance. (*Id.*, at 11). In the latter offense, marijuana was discovered in her purse while she was attempting to shoplift from a store. (*Id.*). At age 27, she was convicted of theft, prohibited acts, and harassment. (*Id.*, at 12–13). In the latter offense, defendant keyed a person's car, called them numerous times, and threatened them despite police intervention. (*Id.*, at 12). From ages 30 to 33, she was convicted of possession of drug paraphernalia, driving on a suspended license, and theft. (*Id.*, at 13).

On October 13, 2015, the Court sentenced defendant. (Doc. 96). Defendant was in criminal history category III with a total offense level of 33, yielding an advisory guideline range of imprisonment of 168 to 210 months. (Doc. 79, at 21). The Court sentenced defendant to 121 months imprisonment followed by six years on supervised

release. (Doc. 100). Defendant did not appeal her sentence. Defendant is currently incarcerated at Waseca FCI with a projected release date of December 11, 2023.[1]

### III. COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence through "compassionate release." A defendant may directly petition the court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons ("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Although some courts disagree, this Court holds that defendants are not required to administratively appeal a warden's denial and may satisfy Section 3582(c)(1)(A) by waiting 30 days from the date the warden receives their request before filing a motion for compassionate release in the courts. *United States v. Burnside*, No. 6:18-CR-2068-CJW-MAR, 2020 WL 3443944, at *3–4 (N.D. Iowa June 18, 2020) (compiling cases).

The court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [Bureau of Prisons] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[1] *Find an Inmate*, BOP, https://www.bop.gov/inmateloc/.

4

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

United States Sentencing Guidelines ("USSG") Section 1B1.13 defines "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). Section 1B1.13 provides that such reasons exist when the defendant is (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physical or mental deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, experiencing serious deterioration due to age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; or (5) is experiencing some other extraordinary and compelling reason as determined by the BOP. Although some courts disagree, this Court holds that Section 1B1.13 is not binding because it predates the First Step Act of 2018's amendments to Section 3582(c)(1)(A) which enabled defendants to bring motions for compassionate release on their own behalf. *United States v. Crandall*, No. 89-CR-21-CJW-MAR, 2020 WL 7080309, at *5 (N.D. Iowa Dec. 3, 2020). The Court recognizes, however, that Section 1B1.13 should still be considered a helpful guidepost in determining whether extraordinary and compelling reasons exist to release a defendant. *Id.*

## IV. DISCUSSION

### A. *Exhaustion of Administrative Remedies*

On August 6, 2020, defendant submitted a request for relief to the warden of her facility. (Doc. 111-1, at 1). On May 28, 2020, the warden denied defendant's request. (*Id.*, at 2). Because 30 days have lapsed from the date the warden received defendant's request, defendant has fulfilled the exhaustion requirement of 3582(c)(1)(A). *Burnside*, 2020 WL 3443944, at *3–4.

### B. *Extraordinary and Compelling Reason*

Defendant argues an extraordinary and compelling reason for release is present because her basal cell carcinoma, a form of skin cancer, puts her at a high risk of severe outcomes if she contracts COVID-19. (Doc. 115, at 6–11). The government agrees. (Doc. 116, at 8–10). Currently, two inmates at Waseca FCI have tested positive for COVID-19 and another 438 have recovered, but none have died.[2] Further, five staff members have tested positive and another 15 have recovered, but none have died. *Id.*

The presence of COVID-19 in a defendant's facility or the BOP generally can constitute an extraordinary and compelling reason for compassionate release if the defendant is particularly susceptible to COVID-19 due to their age or underlying health conditions. *See Burnside*, 2020 WL 3443944, at *7 (compiling cases). The CDC recognizes that "[h]aving cancer currently increases your risk of severe illness from COVID-19."[3] A person's susceptibility to COVID-19 also increases with their age.[4] Eight out of ten deaths related to COVID-19 in the United States have been in adults

---

[2] *COVID-19*, BOP, https://www.bop.gov/coronavirus/.

[3] *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Dec. 1, 2020).

[4] *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (Nov. 27, 2020).

older than 65.  *Id.*  Persons over age 85 are at "[t]he greatest risk for severe illness from COVID-19."  *Id.*

Defendant is 40 years old.  (Doc. 79, at 2).  Although the Court notes her age, defendant is not in or close to being in a high-risk age group.

The record reflects that defendant was diagnosed with basal cell carcinoma in July 2020.  (Doc. 115-1, at 44).  Although she underwent a biopsy on her scalp, the procedure did not fully remove the cancer.  (*Id.*, at 86).  As discussed, the CDC recognizes cancer generally as a risk factor relevant to COVID-19.  It makes no distinction about the type of cancer.  Thus, although basal cell carcinoma is a very common and treatable form of cancer,[5] COVID-19 still presents a complicating risk to defendant.  The BOP agrees, acknowledging that defendant "may be at higher risk of [severe outcomes from] COVID-19 due to" her cancer.  (Doc. 115-1, at 118).  This Court has also previously found that active cancer can constitute an extraordinary and compelling reason for compassionate release.  *United States v. Fandel*, No. 12-CR-3009-CJW-MAR, 2020 WL 4284802, at *5 (N.D. Iowa July 27, 2020).

Were this all the information the Court had, it would find that defendant presented an extraordinary and compelling reason for release because of her cancer despite the currently low volume of COVID-19 cases at her facility.  Defendant filed a supplemental exhibit on October 21, 2020, however, which indicates that she has already contracted and recovered from COVID-19.  (Doc. 122, at 2–3).  She experienced little to no symptoms from COVID-19.  (*Id.*, at 2–7).  The Court has consistently denied motions for compassionate release where the defendant has already recovered from COVID-19, particularly when the defendant's case of COVID-19 was standard or mild.  *See United*

---

[5] *Key Statistics for Basal and Squamous Cell Skin Cancers*, American Cancer Society, https://www.cancer.org/cancer/basal-and-squamous-cell-skin-cancer/about/key-statistics.html.

*States v. Seeman*, No. 18-CR-101-CJW-MAR, 2020 WL 4193272, at *5 (N.D. Iowa July 21, 2020). This is because the CDC notes that "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[6] Further, if a person is reinfected with the same variant of COVID-19, they will likely experience less severe symptoms the second time because their body has developed antibodies to the virus.[7] Thus, although the Court acknowledges that defendant has a condition which puts her at a higher risk of complications from COVID-19, she ultimately did not experience such complications and is not likely to experience them in the future.

For these reasons, the Court finds defendant has not presented an extraordinary and compelling reason for release. The Court will, however, analyze the Section 3553(a) factors as if defendant had presented such a reason.

### C. *Section 3553(a) Factors and Danger to Community*

Defendant argues the Section 3553(a) factors favor release. (Doc. 115, at 11–13). Guideline Section 1B1.13(2) provides compassionate release is appropriate only when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" Section 3582(c)(1)(A) requires a court to consider the factors set forth in Section 3553(a) before granting compassionate release. Section 3553(a) requires the Court to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide rehabilitative opportunities and care to the defendant; (3) the kinds of sentences available; (4) the sentencing range as set by the USSG; (5) any

---

[6] *Reinfection with COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (Oct. 27, 2020).

[7] *COVID-19 Reinfection and You*, University of Pittsburgh, https://www.pittwire.pitt.edu/news/covid-19-reinfection-and-you (Nov. 11, 2020).

pertinent policy by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need for restitution to any victims.

Defendant's offense was undoubtedly serious. She supplied her boyfriend with dozens of boxes of pseudoephedrine pills for the purpose of manufacturing methamphetamine. In order to circumvent restrictions placed on the purchase of pseudoephedrine pills, defendant recruited others to purchase the pills on her behalf. Although defendant's conduct was fueled in part by her addiction and her relationship with her co-conspirator, she was also motivated by money. Defendant knowingly gave false testimony to cover-up the conspiracy and fled when officers attempted to arrest her. Further, at least at the time of sentencing, she intended to marry her co-conspirator when released. Aside from some educational difficulties, little in defendant's background explains or mitigates her involvement in the use and distribution of controlled substances.

While incarcerated, defendant has earned her GED and taken a significant number of educational courses. (Doc. 115-3). She has completed drug treatment. (*Id.*). She has also worked in an automotive garage and earned the trust of her supervisors. (Docs. 115-2 & 115-3). She has received only two minor disciplinary reports, one for receiving a tattoo in February 2017 and another for jamming a legal copier while photocopying personal pictures in January 2018. (Doc. 116-3). In a personal letter, defendant expresses that prison has been a largely positive rehabilitative experience for her. (Doc. 115-6). The Court acknowledges that defendant has a stable release plan (Doc. 115-4) and the support of friends and family (Docs. 115-5).

On balance, the Section 3553(a) factors weigh against release. Defendant has served approximately five and a half years of a ten-year term of incarceration with, after adjusting for good time credit, three years left to serve. Although the instant term of incarceration is far longer than any term defendant has served in the past, her sentence is

warranted based on the offense conduct. Beyond the aggravating nature of the underlying offense itself, defendant's subsequent false testimony and evading of law enforcement officers are particularly troublesome. Even acknowledging defendant's history, her promising performance while incarcerated, and her medical conditions, such a substantial reduction in her sentence is not warranted. In order to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, the remainder of defendant's term of incarceration is necessary to fulfill the goals of Section 3553(a). The Court finds it would be inappropriate to allow defendant to serve the remainder of this term under home confinement. Given her history with controlled substances, her risk of recidivism is significant and, thus, she still presents a threat to the community despite her commendable efforts at rehabilitation. The Court hopes that defendant will continue to take advantage of the rehabilitative opportunities available to her at Waseca FCI.

Thus, even if the Court found defendant presented an extraordinary and compelling reason for compassionate release, it would still deny such release upon its evaluation of the Section 3553(a) factors.

## V. CONCLUSION

For these reasons, defendant's Motion for Compassionate Release (Doc. 114) is **denied**. Defendant must serve the remainder of her term of imprisonment as previously directed. (Doc. 100).

**IT IS SO ORDERED** this 14th day of December, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

10

Case 2:15-cr-01010-CJW-MAR   Document 123   Filed 12/14/20   Page 10 of 10